# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| WIMO LABS LLC, | ) | |
| | ) | |
| Plaintiff, | ) | No. 15 C 8422 (Lead case) |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| POLYCONCEPT N.A, INC. and | ) | |
| HALO BRANDED SOLUTIONS, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| WIMO LABS LLC, | ) | |
| | ) | |
| Plaintiff, | ) | No. 15 C 8424 |
| | ) | |
| v. | ) | |
| | ) | |
| HUB PEN CO. and | ) | |
| HALO BRANDED SOLUTIONS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

## INTRODUCTION

"We must think things not words, or at least we must constantly translate our words into the facts for which they stand, if we are to keep to the real and the true."

Holmes, *Law in Science and Science in Law, in Collected Legal Papers* (1920)

The purpose of modern discovery is to assist in reaching a truthful result[1] by eliminating what has aptly been called "trial by ambush." *See U.S. v. Loggins,* 486 F.3d 977, 988 (7th Cir. 2007); *U.S. ex rel. Robson v. Oliver,* 470 F.2d 10, 13 (7th Cir. 1972). *See also United States v. Procter &*

---

[1] *See Taylor v. Illinois*, 484 U.S. 400, 430 (1988); *Charash v. Oberlin Coll.*, 14 F.3d 291, 298 (6th Cir. 1994); *Griffin v. Javeler Marine Servs., LLC.*, 2016 WL 1559170, at *2 (W.D. La. 2016); *Griffith v. Univ. Hosp., L.L.C.*, 1999 WL 703379, at *2 (N.D. Ill. 1999).

*Gamble Co.* 356 U.S. 677, 682-683 (1958); *Physicians Healthsource, Inc. v. Allscripts Health Sols., Inc.,* 254 F. Supp. 3d 1007, 1024–25, n.11 (N.D. Ill. 2017)(and cases cited). *Cf.* Rule 1, Federal Rules of Civil Procedure (requiring that the Rules must be interpreted to secure the "just" resolution of all civil litigation). While patent cases are not exempt from this basic principle, because of their specialized and often arcane nature, the search for truth and comprehensibility is often perceived as more elusive than in other kinds of litigation.

Thus, courts in this District and throughout the Nation have created Local Patent Rules to govern procedures in patent cases. These Rules were designed to reduce costs, *Allvoice Developments US, LLC v. Microsoft Corp.*, 612 F. App'x 1009, 1014 (Fed. Cir. 2015), by streamlining the litigation process, *Holotouch, Inc. v. Microsoft Corp.*, 2018 WL 2290701, at *3 (S.D.N.Y. 2018); *Finjan, Inc. v. Proofpoint, Inc.*, 2015 WL 9460295, at *2 (N.D. Cal. 2015), and avoiding trial by ambush, stratagem, or evasion. *Sandbox Logistics LLC v. Proppant Express Investments LLC*, 2018 WL 6191044, at *2 (S.D. Tex. 2018); *CommScope Techs. LLC v. Dali Wireless, Inc.*, 2018 WL 4566130, at *3 (N.D. Tex. 2018); *NessCap Co. v. Maxwell Techs., Inc.*, 2008 WL 152147, at *3 (S.D. Cal. 2008).

These, of course, are interactive goals that require the parties to crystallize their theories of the case early in the litigation so as to prevent the "shifting sands" approach to claim construction. *Keranos, LLC v. Silicon Storage Tech., Inc.*, 797 F.3d 1025, 1035 (Fed. Cir. 2015); *Seven Networks, LLC v. Google LLC*, 2018 WL 4501952, at *1 (E.D.Tex.2018). Thus, under LPR 2.2 - 2.5, a party must "identify the likely issues in the case" so that each side will be able to focus and narrow their discovery requests. Fairness and common sense dictate that disclosures must be "meaningful – as

opposed to boilerplate – and non-evasive." [Dkt.112 at 4].[2] The same is true of defenses. The Rules were not intended to create or tolerate clever loopholes. *See Keranos, LLC v. Silicon Storage Tech., Inc.*, 797 F.3d 1025, 1035 (Fed. Cir. 2015); *High 5 Games, LLC v. Marks*, 2018 WL 4462477, at *1 (D.N.J. 2018). *See* LPR 1.6; 2.0.[3] *See* generally, Matthew F. Kennelly & Edward D. Manzo, *Northern District of Illinois Adopts Local Patent Rules*, 9 J. Marshall Rev. Intell. Prop. L. 202 (2010).

Although the patents in this case are directed to what the defendants themselves concede is (or at least appears to be) a "simple writing instrument that is a combination of a stylus and a writing cartridge," [Dkt.112 at 7, 20], the litigation has not been without significant disputes. The defendants did not merely insist that the claim charts provided by the plaintiff under the Local Patent Rules insufficiently "disclose[d] where each claim element is found even in each 'exemplary' accused instrumentality." [Dkt. #112 at 7]. The defendants accused the plaintiff of having "willfully disregarded its obligations to comply" with the Local Patent Rules, pursuant to a "strategic decision," intended to "keep defendants in the dark as to the basis for its infringement allegations" and, intentionally "to materially prejudice Defendants...." [Dkt. #112 at 5, 7, 20, 23].[4] The Defendants

---

[2] In all contexts, "boilerplate" language and objections and responses are meaningless and are thus disallowed. *See e.g.*, *Hammerslough v. Berryhill*, _Fed.Appx._, 2019 WL 141207, at *3 (7th Cir. 2019); *Isby v. Brown*, 856 F.3d 508, 528 (7th Cir. 2017); *Grissom v. Roberts*, 902 F.3d 1162, 1179 (10th Cir. 2018); *James L. Yeager, PH.D. v. Innovus Pharm., Inc.,* 2019 WL 447743 (N.D.Ill. 2019)(citing to the discussion in *Fudali v. Napolitano*, 283 F.R.D. 400, 401 & n.2 (N.D. Ill. 2012)).

[3] *See generally* LPR 2.1 dealing with Initial Disclosures and their purposes; LPR 2.2 Initial Infringement Contentions and their required content; LPR 3.1 Final Infringement Unenforceability and Invalidity Contentions; LPR 3.4 reaffirming the duty to supplement discovery responses and requiring a showing of good cause and absence of unfair prejudice to the opposing party before an amendment of Final Infringement Contentions, etc. will be allowed.

[4] There appeared to be some disagreement even about the number of devices involved.

said that these "highly prejudicial and improper tactic[s]" required them "to guess as to plaintiff's infringement allegations and theories," including its Final Non Infringement Contentions. [Dkt. #112 at 7, 10, 23]. The defendants insisted that compliance with the Local Patent Rules would have been simplicity itself, and that nothing "prevent[ed] plaintiff from making an analysis in the manner required...." The difficulty, the defendants charged, was that plaintiff was simply "unwilling to mak[e] the effort and tak[e] the time." [Dkt. #112 at 10].

The plaintiff had a very different view of what occurred and of the adequacy of their compliance with the Local Patent Rules and their general discovery obligations. Their respective views were set forth in a recently filed 36-page motion which they styled as a Joint Motion and which presented their respective views of various aspects of the case. [Dkt. #112].

**B.**

The parties appeared before me on the Joint Motion. At some point I expressed the view that I thought there were some things on which the parties could agree, but had not, and that agreement on those issues would not harm the legitimate and competing interests of the clients. *See Ability Hous., Inc. v. City of Jacksonville*, 2016 WL 7446407, at *1 (M.D. Fla. 2016); *Am. Airlines, Inc. v. Ltd.*, 2012 WL 12884824, at *3 (N.D. Tex. 2012).[5] Despite the parties' insistence that they had thoroughly discussed the outstanding issues reflected in the "Joint Motion," at my urging, the lawyers had another meeting in my courtroom and were able to arrive at an agreement that resolved

---

[5] Unfortunately, often, overlooked in these discovery disputes is the Seventh Circuit's oft-expressed concern that each hour *needlessly* spent on a dispute is an hour squandered. *See Chicago Observer, Inc. v. City of Chicago,* 929 F.2d 325, 329 (7th Cir.1991) ("Litigation is costly not only for the litigants but also for parties in other cases waiting in the queue for judicial attention."). *See, e.g., Otto v. Variable Annuity Life Insurance. Co.,* 134 F.3d 841, 854 (7th Cir.1998); *Channell v. Citicorp Nat. Services, Inc.,* 89 F.3d 379, 386 (7th Cir.1996); *Szabo Food Service, Inc. v. Canteen Corp.,* 823 F.2d 1073, 1077 (7th Cir.1987).

a number of issues over which they had been at odds.

On February 12th the parties submitted a "Status Report," setting forth the issues on which counsel had agreed and were no longer in dispute. [Dkt. #122]. The "Status Report" stated that agreement had been reached regarding issues discussed on pages 1 - 30 of the "Joint Motion, but that the issues in Section II of the "Joint Motion" relating to Final Unenforceability and Invalidity Contentions remained "unresolved." [Dkt. #122]. Those issues had been addressed at pp. 31 - 37 of the "Joint Motion." [Dkt. #122]. Two days later, the parties filed a "Joint Updated Status Report," noting that they had reached an "additional agreement" related to certain of the issues raised in Sections II(A)(1) and II(B)(2), pp. 31-33, 36 of the "Joint Motion" and that those matters also "have been resolved." [Dkt. #125]. However, the issues raised in Sections II(A)(2) and II(B)(1), pp. 33-36 of the "Joint Motion" remained unresolved. Thus, of the issues in the original 36-page brief, the parties have resolved all of their disputes except for those in the last 3 ½ pages of the original 36 page "Joint Motion."

Despite some initial difficulties, counsel in this case were able through concentrated and thoughtful effort to resolve all but one of their discovery related disputes. They are to be commended for their diligence, patience and cooperativeness.

## ANALYSIS

### A.

The sole issue unresolved by the parties' agreement involves Local Patent Rule 3.1, which is captioned "Final Unenforceability and Invalidity Contentions." The Rule, as recently amended, states that a party asserting invalidity or unenforceability of a patent claim is limited to four prior art

grounds and four non-prior art grounds.[6] Reasons for non-prior-art rejections include vagueness and indefiniteness, non-statutory subject matter, incompleteness, prolixity, old combination, aggregation, multiplicity, new matter, obvious method, undue breadth, and lack of utility under 35 U.S.C. §101.[7]

The plaintiff insists the defendants have failed to properly limit their arguments. "There is no doubt [they say] that each of the 19 grounds [asserted by the defendants] for the '077 Patent and the 18 grounds for the '930 Patent are separate and distinct invalidity arguments...." That separate arguments would be involved to prove each of the 19 allegations of invalidity does not mean that Rule 3.1 has been violated. The Rule allows four prior art grounds of defense and four non-prior grounds per patent at issue. But, say the defendants, the Rule has "no limitation as to the number of *reasons* – [the word is the plaintiff's] – that may be used to support each of the individual grounds." *Id.* at 35. (Emphasis supplied).

Neither party has cited any case or other authority in support of their polar positions.

**B.**

The Federal Circuit has recognized that district judges have case management authority to trim cases down to manageable size in an attempt to prevent jury (and judge) confusion and to reduce the drain on resources. All the courts that have been presented with challenges to Local Patent Rules have found that they are essentially a series of case management orders that fall within the court's broad discretionary powers to limit the number of claims and defenses in patent cases, wisely

---

[6] The general meaning of prior art is knowledge that is available at a given time to a person of ordinary skill in the art. *Parallel Networks Licensing LLC v. IBM*, 2017 WL 1045912 at *9 (D.Del. 2017). *See also Kimberly-Clark Corp. V. Johnson & Johnson*, 745 F.2d 1437, 1453-54 (Fed. Cir. 1984).

[7] For more detailed information regarding prior art and non-prior-art rejections, *see* U.S. Patent & Trademark Office, U.S. Dep't of Commerce, Manual of Patent Examining Procedure §§706.02 (prior art), 706.03 (non-prior art) (5th ed. rev. 2 1996) [hereinafter MPEP].

recognizing that a plethora of claims or defenses ultimately does little more than confuse the fact finder. *See e.g.*, *Keranos, LLC v. Silicon Storage Tech., Inc.*, 797 F.3d 1025, 1035 (Fed. Cir. 2015); *E. G., Oil-Dri Corp. of America v. Nestle Purina PetCare Co.*, 2018 WL 2765952, *3 (N.D. Ill. 2018)(Kennelly, J.); *Straight Path IP Group, Inc. v. Apple Inc.*, 2017 WL 1365124, *2 (N.D. Cal. 2017).

The cases have regularly sustained the court's authority to limit the number of prior art references. *Iridescent Networks, Inc. v. AT&T Mobility, LLC*, 2017 WL 8751908 (E.D. Tex. 2017); *Memory Integrity, LLC v. Intel Corporation*, 2015 WL 6659674, *4 (D. Or. 2015); *Keranos, LLC*, 2013 WL 5763738, *4. That is precisely what Local Rule 3.1(b) has done in limiting Final Invalidity Contentions to no more than 25 prior art references except by permission of the court.[8]

It was to prevent certain common abuses that the Local Patent Rules approved proposed amendments to LPR 3.1(b). *See Oil-Dri Corp. Of America v. Nestle Purina Petcare Co.*, 2018 WL 2765952 (N.D.Ill. 2018). For each claim alleged *in Oil-Dri Corp. Of America* to be invalid, Judge Kennelly ordered that no more than eight prior art grounds per claim and no more than four non-prior art grounds per claim would be allowed. *Id.* at 3. Each combination of references was to count as a separate ground against the overall limits, thus requiring the defendant "to significantly pare down and focus its invalidity and unenforceability contentions." *Id.* at 3. *See also CoStar Realty Info., Inc. v. CIVIX-DDI, LLC*, 2013 WL 12221613, at *1 (N.D. Ill. 2013).

---

[8] Long ago, the Supreme Court noted that attempting to "bury" a patentee by citing numerous prior-art references for the purpose of hindering the patentee's preparation of its case is counter to the spirit of the statute and an abuse of the privilege of raising invalidity defenses. *Seymour v. Osborne*, 78 U.S. 516, 549 (1870).

## C.

In ascertaining the meaning of a statute – or in this case a Rule – we begin with the text. *Kaiser Aluminum & Chem. Corp. v. Bonjorno,* 494 U.S. 827, 835, (1990). *See also Nat'l Ass'n of Mfrs. v. Dep't of Defendant.*, _U.S._, 138 S. Ct. 617, 631 (2018); *Kleber v. CareFusion Corp.*, 914 F.3d 480, 490 (7th Cir. 2019). Often, that is the end of the inquiry. If the language of a statute – or in this case a Rule – "is plain and admits of no more than one meaning" and "if the law is within the constitutional authority of the law-making body which passed it," then "the duty of interpretation does not arise" and "the sole function of the courts is to enforce the statute according to its terms." *Caminetti v. United States,* 242 U.S. 470, 485 (1917); *see also Chevron USA Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43 (1984).

The language of LPR 3.1 is clear and reflects the Rule's purpose. *Grennier v. Frank*, 453 F.3d 442 (7th Cir. 2006). While LPR 3.1 seeks to streamline patent litigation by, in part, limiting the number of grounds on which a claim of invalidity may be based, it does not purport to dictate or limit the proof that may be offered in support of a specific example of a claim based on a permissible ground. Under the cases, grounds include, but are not limited to, lack of utility, indefiniteness, lack of enablement, failure to disclose the best mode, obviousness, and prior art. *Roche Palo Alto LLC v. Apotex, Inc.*, 526 F. Supp. 2d 985, 990 (N.D. Cal. 2007). Under the Local Patent Rule, grounds are limited; proof of discrete and separate instances are not. All that is required is that the specific instance be based on a permissible ground. Limitations that do not exist should not be engrafted onto a statute or rule. *Hart v. United States*, 910 F.2d 815, 817 (Fed. Cir. 1990). The plaintiff's reading of LPR 3.1 makes "language a trap rather than a mode of communication." *State of Illinois ex rel. Hartigan v. Panhandle Eastern*, 852 F.2d 891, 893 (7th Cir. 1988)(*en banc*).

Of course, the question of whether or how the case should be further streamlined is a matter for the informed discretion of Judge Lee. But the reality is that each of the 37 instances referred to by the defendants do not constitute 37 separate grounds. The plaintiff is correct in contending that "any one of them [if proven] could independently be relied upon in an attempt to invalidate the claims of [the] patents." [Dkt. #112 at 33]. That is the purpose of proof. But, that does not mean that under LPR 3.1 each is a separate ground and thus violative of the numerical limitations imposed on the number of grounds that may be advanced under the Rule.

## CONCLUSION

No one can dispute that Local patent Rule 3.1(b) limits Final Unenforceability and Invalidity Contentions to four prior art grounds per claim and four non-prior art grounds. But, as defendants point out and plaintiff cannot dispute, defendants cite only three separate non-prior art *grounds:* indefiniteness, lack of enablement, and lack of written description. Then, for each claim at issue, they cite the term and the particular reason why it is believed they have the better of the validity argument. These are, as plaintiff asserts, "separate and distinct invalidity arguments . . . ." [Dkt. #112, at 33]. They are not, however, separate grounds. The Rule, itself, clearly defines what constitutes a non-prior art ground: indefiniteness, lack of written description, lack of enablement . . . ." Local Patent Rule 3.1(b). And that numerical limitation has not been violated.

Thus, the defendants' argument as to why the term "shaft" is claimed to be indefinite – "lacks objective boundaries and fails to inform those of ordinary skill in the art, with reasonable certainty" – is clearly not a separate ground. It is merely a claimed example of alleged indefiniteness, which is a ground. The Rule doesn't limit the former, only the latter. It doesn't limit the number *of terms* that a defendant might claim are indefinite or not enabling. Accordingly, pointing to six or seven

9

terms in a patent that are claimed to be indefinite or not enabling does not violate the Local Patent Rule. If one supposes a patent riddled with indefinite terms, it would not make sense – and it would certainly not be fair – to, at this stage, limit the defendant to choosing just one term out of that entire patent. And LPR 3.1 does not pretend to do so.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 3/6/19